**E-FILED on**   5/30/06

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| BELINDA RIANDA, et al.,<br><br>        Plaintiffs,<br><br>    v.<br><br>OLIN CORPORATION, et al.,<br><br>        Defendants. | No. C-04-02668 RMW<br><br>ORDER GRANTING DEFENDANTS'<br>MOTION FOR SUMMARY JUDGMENT<br><br>**[Re Docket No. 48]** |

    Defendant Olin Corporation ("Olin") moves for summary judgment or, in the alternative, for dismissal pursuant to Fed. R. Civ. P. 37 against plaintiffs Belinda Rianda and Erica Rianda ("plaintiffs")[1]. Olin's premise for the dismissal under Rule 37 is plaintiffs' failure to provide discovery responses within the time set forth in the court's November 18, 2005 order after numerous previous extensions. Defendant Standard Fusee Corporation ("SFC") joins in Olin's motion. Plaintiffs did not file opposition to the motion. Oral argument by the parties was heard on May 26, 2006. The court has read the moving papers and considered the arguments of the parties. For the reasons set forth below, the court GRANTS defendants' motion for summary judgment.

---

[1]     Plaintiffs' representation by counsel was terminated in November 2004. Plaintiff Belinda Rianda represents herself *pro se* and represents Erica Rianda as *guardian ad litem.*

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT—C-04-02668 RMW
SPT

# I. BACKGROUND

## A. Factual Background

Prior to 1988 Olin owned and operated a highway flare factory and related facilities in Morgan Hill, California (the "Olin Facility"). Compl. ¶ 5. SFC is a manufacturer of emergency flares. *Id.* ¶ 5. In 1988 SFC acquired the Signal Products Division from Olin and the manufacture of flares continued at the Olin Facility. *Id.* In 2000 Olin notified the County of Santa Clara and the State of California that perchlorate existed in the soil and groundwater at its former Morgan Hill manufacturing facility (the "Olin Facility"). *Id.* ¶ 8. Plaintiffs allege that investigations by regulatory agencies led to the detection of perchlorate in the soil and groundwater at the Olin Facility and a "plume" of perchlorate that extended seven miles in the groundwater basin. *Id.* ¶¶ 8, 9, 10. On January 15, 2003 Olin publicly disclosed (for the first time) soil and groundwater contamination from the Olin Facility. *Id.* ¶ 9. The Santa Clara Valley Water Department ("SCVWD") began offering free testing of well water to residents in the area communities. *Id.* ¶ 9. Sampling of private wells for perchlorate was also being performed by order of the California Regional Water Quality Control Board. Decl. Donald Smallbeck Supp. Olin's Mot. Summ. J. ("Smallbeck Decl.") ¶ 2.

Since 1988 plaintiffs have lived on property they own on Via Castana in Morgan Hill, California. Compl. ¶¶ 4, 5. Plaintiffs' Via Castana property consists of a plot of land and a single family residence and is just over two miles from the Olin Facility. *Id.* Plaintiffs allege that in or about January 2003 they first discovered that "the sole drinking water supply for their property was contaminated with perchlorate" when they were notified by the SCVWD that the district was investigating the possible contamination of their property. *Id.* ¶ 11. Plaintiffs contend that the perchlorate had migrated from the Olin Facility to their property through the underground aquifer. *Id.* On July 2, 2004 plaintiffs filed the present action alleging that defendants are responsible for the perchlorate contamination on plaintiffs' property. Plaintiffs allege the following causes of action: (1) negligence, (2) negligence per se, (3) strict liability for ultrahazardous activity, (4) trespass, (5) private nuisance, (6) public nuisance, (7) intentional infliction of emotional distress, (8) negligence infliction of emotional distress, (9) monetary damages under the 42 U.S.C. § 9601, et seq. (the

1  Comprehensive Environmental Response, Compensation, and Liability Act or "CERCLA"), and
2  (10) declaratory relief under CERCLA.  Plaintiffs seek damages including diminution in the value of
3  the Via Castana property, consequential losses due to the stigma caused by contamination of the
4  groundwater basin, medical expenses due to illnesses, disorders, and disease, loss of income and
5  earnings capacity, general damages for emotional distress suffered because of fears of future safety
6  and health and financial security, and punitive damages.  *Id.* ¶¶ 13-18.
7      Plaintiffs' claims all involve alleged perchlorate contamination at their Via Castana property.
8  Defendants submit that in June 2005 a MACTEC Engineering & Consulting Inc. ("MACTEC") well
9  sampling crew visited the Via Castana property and verified that there was no well water on the
10 property.  Smallbeck Decl. ¶ 3; Decl. Amy L. Wachs Supp. Olin's Mot. Summ. J. ("Wachs Decl.") ¶
11 1.  In addition, the crew determined that the residence on that property was served by the City of
12 Morgan Hill water utility.  *Id.*  Defendants offer the declaration of Richard C. Pleus, Ph.D., a
13 professor and lecturer in the areas of pharmacology and toxicology, including the risks to humans of
14 exposure to perchlorate.  Decl. Richard C. Pleus, Ph.D. Supp. Olin's Mot. Summ. J. ("Pleus Decl.")
15 ¶¶ 1, 2, 6.  Dr. Pleus notes that "[t]oxicological and pharmacological data indicate that effects on the
16 thyroid system are the first measurable effects of perchlorate exposure."  *Id.* ¶ 26.  Dr. Pleus
17 reviewed Belinda Rianda's medical records that had been subpoenaed and concluded: (1) her thyroid
18 condition is a form of hyperthyroidism while excessive exposure to perchlorate would lead to
19 hypothyroidism, (2) her medical records indicate she has a family history of her diagnosed type of
20 thyroid disease, (3) her thyroid condition was medically treated in 1995, resulting in removal of her
21 overactive thyroid gland, and so perchlorate would have no effect on her thyroid function.  *Id.* ¶8.
22 Dr. Pleus reviewed Erica Rianda's medical records and concluded that she has a genetic
23 predisposition to her diagnosed type of thyroid condition from both sides of her family, and that
24 immediate family members were reported to have such thyroid conditions.  *Id.* ¶ 9.  Therefore, Dr.
25 Pleus concludes that while some studies indicate excessive exposure to perchlorate may result in
26 certain forms of hypothyroidism (or the inhibition of the body's uptake of iodide), the thyroid
27 conditions described in plaintiffs' medical records could not have been the result of exposure to
28 perchlorate.  *Id.* ¶¶ 27, 52; *see also* Olin's Mot. Summ. J. at 4; Feb. 17, 2006 Decl. Randall C.

Creech Opp. Pls.' Mot. Reconsid. ("Creech Feb. 2006 Decl.") ¶ 14.

### B.  Procedural History

In October 2004 the parties agreed that initial disclosures would be made November 19, 2004. On November 2, 2004 plaintiffs notified the court that they would proceed *pro se*. On December 17, 2004 the court granted plaintiffs' request for a stay in discovery to February 4, 2005 because plaintiffs were in the process of obtaining new legal representation. In February 2005 the parties notified the court that plaintiffs still had not yet obtained legal counsel. Accordingly, the court ordered that discovery be stayed to June 3, 2005 and urged plaintiffs to obtain counsel. Plaintiffs failed to appear for the case management conference scheduled for June 17, 2005. The court scheduled a hearing with an order to show cause why the case should not be dismissed. On September 2, 2005 plaintiffs informed the court they had not yet obtained counsel but were actively looking. The court granted another stay of discovery to October 14, 2005 but noted that the case would be set for trial at that time even if plaintiffs have not obtained legal counsel. On October 13, 2005 plaintiffs stated that counsel had not yet been obtained. Plaintiffs cited that delays were due to *inter alia* medical and physical difficulties as well as financial difficulties. Plaintiff Belinda Rianda also noted that her time has been otherwise diverted by her efforts to inform the community of perchlorate in the drinking water. However, plaintiffs assured that she had been interviewing attorneys and an interested firm was reviewing her case at the time.

At the October 14, 2005 case management conference the court permitted limited discovery to proceed—plaintiffs' initial disclosures were to be completed by November 5, 2005—and continued remaining discovery. At the next scheduled case management conference on November 18, 2005 plaintiffs notified the court they still had not yet obtained counsel. The court set a trial date of November 6, 2006, but provided that if plaintiffs did later retain counsel, new counsel may request modification of this schedule. The court also ordered *inter alia* that plaintiffs file expert reports by February 15, 2006 and that defendants file expert reports by April 14, 2006. On February 9, 2006 the parties filed a joint case management statement which stated that plaintiffs still had not yet obtained counsel. Defendants also noted that plaintiffs' responses to discovery requests have been incomplete and untimely. Plaintiffs again cited the same physical, medical, and financial

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT—C-04-02668 RMW
SPT                                                                                 4

difficulties as having delayed their ability to obtain counsel and respond timely to discovery requests. Plaintiffs, however, note that they had ordered water tests to begin in March 2006 and made requests for medical and other documents requested by defendants. Plaintiffs sought stay of discovery until they obtained counsel. The court declined and ordered that the case shall proceed as previously scheduled. On February 14, 2006 plaintiffs filed an emergency motion for reconsideration asking the court to extend the February 15, 2006 deadline for plaintiffs' expert reports. Noting that both the court and defendants have been accommodating in staying the case and extending deadlines numerous times so that plaintiffs could obtain counsel, the court declined plaintiffs' February 14, 2006 request for further extension. On February 27, 2006 the court received a document from plaintiffs styled "Rule 26 Report" that listed three names of purported experts that will testify, along with plaintiffs' statement of the expected testimony of the listed individuals.[2] On April 12, 2006 defendants filed the present motion for summary judgment.

## II.  ANALYSIS

Defendants argue summary judgment in their favor is warranted since plaintiffs have not and cannot present any expert opinion evidence and, accordingly, there are no genuine issues of material fact as to any of plaintiffs' claims.

### A.  Failure to Comply with Discovery Deadlines

As an initial matter, defendants' motion for summary judgment presupposes that plaintiffs' failure to comply with Rule 26(a)(2) disclosures and the court's February 27, 2006 Order Denying Plaintiffs' Request for Reconsideration ("Feb. 27, 2006 Order") barred plaintiffs from introducing expert opinion testimony. Specifically, the Feb. 27, 2006 Order declined to extend the deadline for plaintiffs' disclosures of their expert reports. However, defendants did not formally file a motion or set a hearing for the exclusion of expert opinion evidence pursuant to Fed. R. Civ. P. 37 in

---

[2] The document was stamped received by the court clerk on February 27, 2006, but the cover sheet states a February 15, 2006 date. Defendants point out they were never served with this document and only received it for the first time after requesting it from the court on March 16, 2006. Decl. Carol A. Rutter Supp. Olin's Mot. Summ. J. ("Rutter Decl.") ¶ 5; Decl. Randall C. Creech Supp. Olin's Mot. Summ. J. ("Creech Decl.") ¶ 4.

accordance with Local Rule 37-3.[3]  *See* Fed. R. Civ. P. 37(c)(1) ("A district court has discretion to issue discovery sanctions under Rule 37(c)(1)."); *see also Yeti by Molly Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1107 (9th Cir. 2001) (noting that a showing of harmlessness or substantial justification could overcome Rule 37(c)(1) sanction request).  Nevertheless, the court's Feb. 27, 2006 Order reiterated that plaintiffs' expert reports were due February 15, 2006.  It cannot be disputed that, despite numerous extensions of the stay in discovery, plaintiffs failed to comply with the court's order to provide plaintiffs' expert reports by February 15, 2006.[4]  Following defendants' filing of the present motion for summary judgment, plaintiffs failed to file any opposition, including any affidavits of experts, in support of why summary judgment in favor of defendants should not be granted.  Plaintiffs have not produced any expert opinion evidence or reports in this action to date and, even if plaintiffs did, such reports would in all likelihood be barred as untimely at this juncture.  At oral argument plaintiffs indicated they had still not yet provided any further discovery responses, disclosures, or filed any expert reports in this action.

**B.    Summary Judgment Motion**

1.    Legal standard

Summary judgment is granted where there is no genuine issue as to any material fact.  FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  In a motion for summary judgment the court draws all reasonable inferences that may be taken from the underlying facts in the light most favorable to the nonmovant.  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  In *Nissan Fire* the Ninth Circuit elaborated:

> In order to carry its burden of production, the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial.  In order to carry its ultimate burden of persuasion on the motion, the moving party must persuade the court that there is no genuine issue of material fact.

---

[3] In the present motion defendants do move, in the alternative, for sanctions pursuant to Fed. R. Civ. P. 37 to dismiss the entire action, but does not otherwise comply with Local Rule 37-3.

[4] Although plaintiffs filed a document captioned "Rule 26 Report," it does not appear defendants were served and the document was not filed with the court until February 27, 2006.  In any event, it is not disputed that no written expert reports were served or filed in February 2006 (or any time thereafter).

> If a moving party fails to carry its initial burden of production, the nonmoving party has no obligation to produce anything, even if the nonmoving party would have the ultimate burden of persuasion at trial. In such a case, the nonmoving party may defeat the motion for summary judgment without producing anything. If, however, a moving party carries its burden of production, the nonmoving party must produce evidence to support its claim or defense. If the nonmoving party fails to produce enough evidence to create a genuine issue of material fact, the moving party wins the motion for summary judgment.

*Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos.*, 210 F.3d 1099, 1102-03 (9th Cir. 2000) (citations omitted).

Defendants make a twofold argument in support of their motion for summary judgment. First, defendants argue that plaintiffs' claims are negated by evidence. Second, defendants argue that plaintiffs do not have sufficient evidence of essential elements of each of their ten causes of action to carry their ultimate burden of persuasion at trial. The court agrees.

2.  Burden of production

Here, plaintiffs' claims are negated by evidence offered by defendants yet plaintiffs offer no opposition. Notwithstanding plaintiffs' inability to make its Rule 26 disclosures, plaintiffs were not precluded from opposing defendants' motion for summary judgment. Defendants show that (1) plaintiffs' property utilizes municipally-provided water and contains no wells and (2) medical records subpoenaed from plaintiffs' medical providers indicate thyroid conditions that are the opposite of thyroid disorders that have been linked to excessive exposure to perchlorate.[5] Smallbeck Decl. ¶ 3; Wachs Decl. ¶ 1; Creech Feb. 2006 Decl. ¶ 14. Defendants offered the expert opinion of Dr. Pleus that plaintiffs' thyroid conditions could not have been caused by exposure to perchlorate. Pleus Decl. ¶ 52. Plaintiffs have produced nothing to refute defendants' assertions or to support their claims. Plaintiffs allege that they first became aware that their water supply might be contaminated when the SCVWD began investigating for possible contamination of plaintiffs' property. However, plaintiffs allege, and do not dispute, that SCVWD's investigations following the public disclosure of contamination from the Olin Facility, involved only *well water*. *See* Compl. ¶¶ 9, 11 (emphasis

---

[5] The perchlorate contamination affected those properties which utilize well water drawn from the contaminated aquifer. Here, however, a MACTEC well sampling crew determined, after a visit to plaintiffs' residence in Morgan Hill, that there are no water wells on the property and the residence at plaintiffs' property is served by the City of Morgan Hill water utility. Smallbeck Decl. ¶ 3.

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT—C-04-02668 RMW
SPT                                      7

added). Plaintiffs allege that there is contamination of the local water supply but provide no factual allegations to support that contention. In totality the inference is that plaintiffs will not be able to establish contamination at the Olin Facility, which affected well water drawn from a ground aquifer within the plume, caused the presence of any alleged perchlorate in plaintiffs' water supply.[6] From the record, even if plaintiffs were exposed to perchlorate, plaintiffs' alleged thyroid conditions are not the types caused by exposure to perchlorate. *See* Pleus Decl. ¶¶ 8, 9, 27, 52.

### 3. Expert testimony

Moreover, because plaintiffs have not offered any expert opinion evidence (and likely are barred from so offering), plaintiffs' claims fail for lack of expert opinion evidence.[7] This is a toxic tort case. "If the matter in issue is one within the knowledge of experts *only* and not within the common knowledge of laymen, it is necessary for the plaintiff to introduce expert opinion in order to establish a prima facie case." *Carson v. Facilities Dev. Co.*, 36 Cal. 3d 830, 844 (1984) (quotations and citation omitted); *see also* FED. R. CIV. P. 701. In a toxic tort case "presenting complicated and possibly esoteric medical causation issues, the standard of proof ordinarily required is a reasonable medical probability based upon competent expert testimony that the defendant's conduct contributed to the plaintiff's injury." *Whiteley v. Philip Morris Inc.*, 117 Cal. App. 4th 635, 699 (2004); *see Cabrera v. Cordis Corp.*, 134 F.3d 1418 (9th Cir. 1998) (noting proof of causation of medical condition required expert testimony). Similarly, in *Cottle v. Super. Ct.*, the court held that "causation must be founded upon expert testimony" while addressing the prima facie showing of causation for alleged personal injuries in a toxic tort case. 3 Cal. App. 4th 1367, 1385 (1992).

#### a. Counts one through six

In counts one through six (alleging negligence, strict liability, trespass, and nuisance), plaintiffs essentially allege that the contamination at the Olin Facility caused contamination of their water supply and property resulting in (1) physical illness, disorders, and disease; (2) diminution in

---

[6] Plaintiffs also allege contamination of the soil on their property, which is not necessarily negated by defendants' proffered evidence. Nevertheless, such allegations will require expert opinion evidence as addressed in the subsequent section.

[7] As noted earlier, plaintiffs have not served any expert opinion reports to date.

the value of their Morgan Hill property; and (3) damages due to the stigma caused by the contamination. It is not disputed that defendants take responsibility of the soil and groundwater contamination and the resulting subterranean plume as publicly announced in January 2003. Nevertheless, in order to establish their prima facie case for these causes of action, plaintiffs will need to establish matters "not within the common knowledge of laymen." Specifically, plaintiffs will need expert testimony to establish *inter alia* the existence and levels of perchlorate in their water supply and on their property and that the source of such perchlorate is defendants' contamination of the Olin Facility. In addition, to support their claims of personal injuries, plaintiffs will need medical expert testimony to establish that they suffer illnesses, disorders, and diseases, and such injuries are caused by the contamination. Plaintiffs would also need expert testimony to support their claims of diminution in property value. Absent the requisite medical and other expert opinion evidence, plaintiffs' claims cannot survive.

        b.   Counts seven and eight

Because plaintiffs cannot prove personal injuries caused by defendants' acts or omissions, plaintiffs' claims of emotional distress necessarily fail. "[I]n ordinary negligence actions for physical injury, recovery for emotional distress caused by that injury is available as an item of parasitic damages." *Potter v. Firestone Tire & Rubber Co.*, 6 Cal. 4th 965, 981 (1993). "Where a plaintiff can demonstrate a physical injury caused by the defendant's negligence, anxiety specifically due to a reasonable fear of a future harm attributable to the injury may also constitute a proper element of damages." *Id.* The *Potter* court held that claims of intentional infliction of emotional distress must be "based upon medically or scientifically corroborated knowledge that the defendant's conduct has significantly increased the plaintiff's risk of cancer and that the plaintiff's actual risk of the threatened cancer is significant." *Id.* (citations omitted). While the *Potter* case dealt with fear of cancer, the California Supreme Court specifically noted that the "discussion is equally relevant to emotional distress engendered by fear that other types of serious physical illness or injury may result from toxic exposure." *Id.* at 980; *see also Kerins v. Hartley*, 27 Cal. App. 4th 1062, 1074 (1994). Finally, while plaintiffs here also claim diminution to property value, an emotional distress claim cannot be derivative of damages to property only. *Id.* at 985 ("[W]ith rare exceptions, a breach of

the duty must threaten physical injury, not simply damage to property or financial interests.").

       c.  Counts nine and ten

  Defendants argue that plaintiffs cannot maintain their two CERCLA causes of action under 42 U.S.C. § 9601, et seq. "CERCLA authorizes private parties to institute civil actions to recover the costs involved in the cleanup of hazardous wastes from those responsible for their creation." *Carson Harbor Village, Ltd. v. Unocal Corp.*, 270 F.3d 863, 870 (9th Cir. 2001) (quotations and citation omitted). To establish a prima facie case for a private CERCLA action, a plaintiff must show: (1) the site on which the hazardous substances are contained is a "facility" as defined under CERCLA; (2) a "release" or "threatened release" of "hazardous substance" from the facility has occurred within the definitions under CERCLA; (3) such release or threatened release has caused the plaintiff to incur response costs that were "necessary" and "consistent with the national contingency plan"; and (4) the defendant is within one of four classes of persons subject to the CERCLA liability provisions. *Id.* at 870-871. Therefore, as with the tort causes of action, plaintiffs must establish the presence of perchlorate in their water supply and on their property and that such contamination was caused by the Olin Facility's contamination. Absent expert opinion evidence, plaintiffs cannot meet the prima facie showing to bring a private CERCLA action.

  **C.** **Rule 37 Dismissal**

  Even if the court were to deny defendants' motion for summary judgment, the case would be properly dismissed for failure to comply with discovery and disclosure requirements, including the courts' orders thereto, despite numerous continuances allowed by the court. *See* FED. R. CIV. P. 37(b). As discussed above, the court has extended plaintiffs' time to respond to defendants' November 19, 2004 discovery requests numerous times and for more than a year. In that time plaintiffs have failed to otherwise meet discovery and disclosure requirements and have failed to obtain counsel despite numerous assurances that they are actively searching and meeting with interested attorneys.

### III.  ORDER

For the foregoing reasons, the court GRANTS defendants' motion for summary judgment.

DATED:     5/30/06                                      *Ronald M Whyte*
                                                                                 RONALD M. WHYTE
                                                                                 United States District Judge

**Notice of this document has been sent to:**

**Counsel for Plaintiffs:**

Belinda Rianda
15635 Via Castana
Morgan Hill, CA 95037

**Counsel for Defendants:**

Carol A. Rutter, Esq.      carol.rutter@husch.com
Randall C. Creech           rcreech@sjlegal.com
Diane Terese Gorczyca  diane.gorczyca@sdma.com

Counsel are responsible for distributing copies of this document to co-counsel that have not registered for e-filing under the court's CM/ECF program.

**Dated:**   5/30/06                               SPT
                                                          **Chambers of Judge Whyte**